THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: March 06, 2008



Honorable Pamela Pepper
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

---

IN RE:  **MARK D. VAN BODEGOM SMITH,**  Case No. 07-25202-PP
   **and ALISON Y. VAN BODEGOM SMITH**
      **Debtors.**      Chapter 13

---

### DECISION AND ORDER SUSTAINING THE TRUSTEE'S OBJECTION TO
### CONFIRMATION OF THE DEBTORS' CHAPTER 13 PLAN

---

  The trustee filed an objection to confirmation of the debtors' Chapter 13 plan, alleging that

the debtors had failed to commit all of their disposable income to the plan as required by 11 U.S.C.

§ 1325(b)(1)(B).  The trustee also objected to confirmation on the ground that the debtors did not

file the plan in good faith.  The debtors argued that they properly calculated their disposable income

as required by §1325(b)(3) and §707(b)(2)(A)(iii)(I).  For the reasons that follow, the Court sustains

the trustee's objection to confirmation.

1

# I.   FACTUAL BACKGROUND

On March 21, 2006, the debtors both signed a purchase money mortgage with First Indiana Bank for the amount of $55,000, which the debtors promised to pay in regular periodic payments. The debtors promised to pay this obligation in full no later than April 20, 2021.  That mortgage was assigned to CitiMortgage, Inc. on March 21, 2006.  (*See* Claim Number 5.)  Also on March 21, 2006, in return for receiving $220,000, Mr. Van Bodegom Smith signed an adjustable rate note with First Indiana Bank.  (*See* Claim Number 15.)  The debtors had not satisfied the obligations under either note by the time they filed their petition in 2007.

The debtors filed their Chapter 13 petition and Chapter 13 plan on the same day.  On the petition, the debtors listed their address as 21480 Ann Rita Drive, Brookfield, Wisconsin.  The debtors filed an amended Chapter 13 plan and an amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income Form (hereinafter referred to as "Form B22C") two months later.

At some point after filing their bankruptcy petition, the debtors decided to relocate to Troy, Michigan.  In their amended Chapter 13 plan, as in their original plan, they stated their intention to surrender the homestead at 21480 Ann Rita Drive, Brookfield, WI (hereinafter referred to as "Brookfield property") in satisfaction of the mortgage debts owed to two creditors: CitiMortgage, Inc. and First Indiana Bank.  The debtors proposed to pay their unsecured creditors not less than 1.65% of timely-filed and allowed claims.

The debtors are above-median-income debtors and, as such, they were required to complete the entire B22C Form.  Even though they stated their intention to surrender the Brookfield property, the debtors deducted the mortgage payments for the that property as expenses on their Form

2

B22C.[1]  The debtors deducted $1,274 for the payments due to First Indiana Bank for the first mortgage on the property, and $476 for payments due to CitiMortgage, Inc. for the second mortgage. (Amended Form B22C, line 47(a)-(b), Docket Number 16.)  According to Form B22C, after deducting these amounts and performing all of the necessary calculations, the debtors were left with a monthly disposable income of $56.27.

## A.     Arguments of the Parties

### 1.     *The Trustee's Argument Against Confirmation*

In his objection to confirmation, counsel for the Chapter 13 standing trustee argued that the debtors' plan did not provide for all of their projected disposable income to be paid to unsecured creditors because the debtors deducted the cost of the mortgages for the Brookfield property on Form B22C, even though their plan stated an intention to surrender the property.  The trustee concluded that, because the Chapter 13 plan proposed to surrender the property, the amounts the debtors owed for the mortgages no longer would be "contractually due" once the Chapter 13 plan was confirmed.  The trustee argued that the Chapter 13 plan would constitute a new agreement between the debtors and the mortgage holders, one in which the debtors would return the collateral rather than paying the amounts "contractually due" pursuant to §707(b)(2)(A)(iii)(I).  Thus, the

---

[1] The trustee argued that the debtors also deducted "back taxes" on their B22C Form.  It is not clear that this actually occurred.  The debtors' amended Schedule J lists their expenses as $1,274 for the first mortgage, $476 for the second mortgage, and $375 for property taxes. (Amended Schedule J, Docket Number 16, lines 1, 12, and 13b.)  Form B22C instructs the debtors that for "[m]ortgage debts, [the debtors] should include payments of taxes and insurance required by the mortgage."  (Amended Form B22C, line 47, Docket Number 16.)  The debtors' B22C Form deducts only $1,274 for the debt owed to First Indiana Bank and $476 for the debt owed to Citimortgage.  That form does not appear to include the amount that would have been due for any real estate taxes on the Brookfield property, delinquent or otherwise.  The Court is not convinced that the debtors deducted delinquent real estate taxes for the Brookfield property on their B22C Form.  In any event, if they did deduct the delinquent taxes, this Court's decision as to the deduction of the expenses for the first and second mortgages applies with equal force to a deduction for those taxes.

3

trustee contended that it was not proper for the debtors to deduct those amounts as expenses on Form B22C.

The trustee further argued that, even if the mortgage payments for the Brookfield property were "contractually due" at the time the debtors filed their petition pursuant to §707(b)(2)(A)(iii)(I), the debtors also were required to demonstrate that those amounts were "reasonably necessary to be expended" for the maintenance or support of the debtors or a dependent of the debtors under §1325(b). The trustee argued that mortgage expenses for a property that the debtors intended to surrender were not expenses "reasonably necessary to be expended" for the maintenance or support of the debtors.

Finally, the trustee argued that even if the debtors were justified in subtracting the Brookfield mortgage payments on their Form B22C, they did not file their plan in good faith, because the surrender of the property gave them ability to pay more money to their unsecured creditors than the plan proposed.

2. *The Debtors' Argument In Favor of Confirmation*

The debtors responded that § 1325(b)(3) requires the Court to look to §707(b)(2)(A) and (B) to determine the amounts "reasonably necessary to be expended" for the maintenance or support of an above-median-income debtor. They noted that §707(b)(2)(A)(iii)(I) requires debtors to deduct all amounts that are "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. §707(b)(2)(A)(iii)(I). The debtors concluded that, as of the petition date, they had a legal obligation to pay the mortgages on the Brookfield property; therefore, they properly deducted those mortgages from their disposable income because those payments were "scheduled as contractually due to secured creditors in each of the 60 months following the date of the petition." Id. The debtors contended that they properly calculated their disposable income as required by §1325(b). Finally, they argued that the disposable income determination was not an element of good faith under §1325(a)(3), and therefore that their plan was filed in good faith.

## II. LEGAL ANALYSIS

**A. Sections 1325(b)(2), 1325(b)(3) and 707(b)(2)(A)(iii)(I), When Read Together, Do Not Allow Debtors to Deduct Payments On Secured Debt When the Debtors Intend To Surrender the Collateral That Secures the <u>Debt</u>.**

1. <u>Section 1325(b)(1) Requires the Debtor To Commit All "Projected Disposable Income" To the Plan.</u>

Section 1325(b)(1) reads as follows:

If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan -

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

5

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325(b)(1). Because the trustee has objected, then, this Court cannot confirm the debtors' plan unless, as of its "effective date," it provides for all of the debtors' "projected disposable income" to be committed to paying the unsecured creditors.

2      <u>Section 1325(b)(2) Defines "Disposable Income" As "Current Monthly Income" Minus "Amounts Reasonably Necessary To Be Expended" For the Support and Maintenance of the Debtor</u>.

The statute does not define "projected" disposable income. The next subsection– 1325(b)(2)–does, however, define "disposable income." Section 1325(b)(2)(A)(i) states that, "[f]or the purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . . ." Therefore, in order to determine whether debtors are committing all of their "projected disposable income" to paying the unsecured creditors, a court first must determine the debtors' "disposable income" as defined by § 1325(b)(2).

6

a. Definition of "Current Monthly Income"

Section 1325(b)(2) first refers to "current monthly income." "Current monthly income" is a defined term under the statute. Section 101(10A) of the statute defines "current monthly income" as "the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." So–to determine a debtor's "disposable income" under § 1325(b)(2), one starts with the amount of income the debtor received during the six full months prior to the month in which he filed his petition.

b. Definition of "Amounts Reasonably Necessary To Be Expended"

Next, § 1325(b)(2) requires one to subtract from the "current monthly income" the "amounts reasonably necessary to be expended for the maintenance or support of the debtor . . . ."[2] This requires one to figure out what amounts are "reasonably necessary to be expended" for the maintenance and support of the debtor. In § 1325(b)(3), Congress attempted to provide some guidance by defining "amounts reasonably necessary to be expended." Section 1325(b)(3) states:

> Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than–
>
> (A)    in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

---

[2] In full, this section says that "disposable income" is defined as current monthly income less amounts reasonably necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, *that first becomes payable after the date the petition is filed*." This Court assumes that the last clause–"that first becomes payable after the date the petition is filed"–modifies only "a domestic support obligation," because the verb "becomes" is in the singular form, and not in the plural form as it would be if it modified "amounts reasonably necessary to be expended."

7

> (B)    in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>
> (C)    in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4.

11 U.S.C. § 1325(b)(3).

Thus, if a debtor has a current monthly income, when multiplied by 12, that is greater than the amounts stated in §1325(b)(3)(A)-(C), the statute requires that "amounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." Id.

The trustee argues that even if a court determines that § 707(b)(2) seems to allow a debtor to subtract a certain expense, that court still must conduct an analysis to determine whether that expense is "reasonably necessary" to be spent for the maintenance or support of the debtor. In other words, the trustee argues that figuring out what expenses can be deducted in the disposable income analysis is a two-part process; part one requires the debtor to look for the particular expense under §707(b)(2), and if the expense is listed there, part two allows the debtor to subtract that expense from the current monthly income only if it is an "amount reasonably necessary" to be spent for the debtor's maintenance and support. While ultimately this Court agrees with the trustee that the statute does not allow the debtors to subtract mortgage payments they will not be making, it does not agree with this particular rationale for reaching that conclusion.

The bankruptcy court for the Western District of Michigan took the trustee's suggested approach in In re McGillis, 370 B.R. 720 (Bankr. W.D.Mich. 2007). In support of its analysis, the McGillis court reasoned as follows:

8

Courts have no choice now but to use the debtor's average historical earnings to calculate the income component of Section 1325(b) disposable income because that is how BAPCPA defines "current monthly income." However, Congress elected not to impose a similar definitional constraint upon the calculation of the expense component. Rather, it simply left the deduction of all expenses, whether they be for maintenance and support, charity, or business, to "those amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). Likewise, Congress did not replace this phrase with a mandate to the effect that support and maintenance expenses "shall mean those amounts determined under Sections 707(b)(2)(A)(i-iii) and (B)" or something similar when the debtor's current monthly income exceeds the Section 1325(b)(3) limit. Instead, Congress repeated in Section 1325(b)(3) the very same phrase that it had already used to describe permissible deductions in Section 1325(b)(2): that is, only those deductions that are "reasonably necessary to be expended." Indeed, this is the same phrase that was used to describe permissible support and maintenance expenses prior to BAPCPA. However, the 2005 amendments did elaborate upon this familiar concept by imposing yet another limitation, that being that the deductions claimed by the above-median-income debtor be as reasonably necessary must also "be determine in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . .". 11 U.S.C. § 1325(b)(3).

Id. at 729. *See also*, In re McPherson, 350 B.R. 38, 44-45 (Bankr. W.D.Va. 2006) ("Payments that a debtor does not propose to make during the pendency of the plan and that a debtor is not required to make under the plan cannot be said to be reasonably necessary for the support of that debtor.")

But §1325(b)(3) says that "amounts reasonably necessary to be expended . . . *shall* be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" for above-median debtors. (Emphasis added.) The word "shall," of course, is mandatory, not permissive. This language gives an above-median-income debtor no choice but to look to subparagraphs (A) and (B) of §707(b)(2) to determine whether her expenses are "reasonably necessary." *See* In re Farrar-Johnson, 353 B.R. 224, 228-29 (Bankr. N.D.Ill. 2006) (Section 1325(b)(3) "states plainly that disposable income 'shall' be determined under Section 707(b)(2) using the IRS standards. . . . Although context may sometimes suggest otherwise, 'shall' typically means 'must.'")

9

The McGillis court found flexibility, not in the "shall" language of § 1325(b)(3), but in the "in accordance with" language of that section. The McGillis court found this flexibility by looking to the other place in § 1325 where Congress used the words "in accordance with"–§ 1325(b)(2). Noting that the term "in accordance" "simply means in agreement or in conformance," the McGillis court observed that

> Congress used the same phrase in BAPCPA to amend immediately preceding Section 1325(b)(2) when it excepted from current monthly income support payments received for a dependent child "made in accordance with applicable non bankruptcy law to the extent reasonably necessary to be expended for each child . . .". It is unlikely that anyone would suggest that "in accordance" as used in [section 1325(b)(2)] means that the applicable bankruptcy laws ordering the support are to override the bankruptcy court's independent consideration of whether the expenditure of the same is required. Otherwise, the additional reference to the reasonable necessity of the payments in that clause would be superfluous. Instead, the phrases "applicable nonbankruptcy laws" and "to the extent reasonably necessary to be extended [sic]" must be interpreted as being conjoined by "in accordance with" so as to compliment each other. In other words, a debtor may exempt from his current monthly income only those child support payments that are made in conformance with applicable nonbankruptcy law. Stipends from an indulgent uncle will not be excepted. However, even court-ordered child support is not automatically excluded because the debtor must also establish to the bankruptcy court's own satisfaction that the expenditure of that support is reasonably necessary for the child.

370 B.R. at 729-30.

Applying this analysis to Congress' use of the phrase in § 1325(b)(3), then, and disagreeing with the Illinois court in Farrar-Johnson, the McGillis court concluded that,

> Section 1325(b)(3) should not be interpreted as categorically substituting the Section 707(b)(2) expense restrictions for the "reasonably necessary" expense requirement already imposed by Section 1325(b)(2). Rather, it should be interpreted as offering a further guideline for ensuring that the expenses claimed by an above-median-income debtor are reasonably necessary. Put differently, Section 1325(b)(3) imposes the same requirement upon an above-median-income debtor as it does upon all other debtors: amounts claimed as expenses under Section 1325(b)(3) must in fact be ultimately expended. . . . However, Section 1325(b)(3) imposes upon an above-median-income debtor the further requirement that all planned expenditures must also agree with the expense limitations of Sections 707(b)(2)(A) and (B). If that

10

debtor's planned expenses exceed what is permitted, then the debtor must conform his Section 1325(b) deductions by reducing them to the amounts allowed by those subsections. On the other hand, the converse is not true, for if the debtor's planned expenses are less, then his Section 1325(b) deductions must still be that lesser amount because that is all he in fact plans to expend.

Id. at 730 (internal citation omitted).

The problem this Court has with the McGillis court's interpretation of "in accordance with" is that the phrase appears in a different context in §1325(b)(**2**) than it does in § 1325(b)(**3**). In § 1325(b)(**2**), the term "in accordance" occurs within the phrase "other than child support payments . . . made in accordance with applicable nonbankruptcy law *to the extent* reasonably necessary to be expended for such child." (Emphasis added.) Crucially, in (b)(**2**) the terms "in accordance with" and "reasonably necessary" are linked by the term "to the extent." The presence of the words "to the extent reasonably necessary" gives the bankruptcy court latitude, as the McGillis court observed, to exercise some discretion in determining whether the child support payments are, indeed, "reasonably necessary" for the maintenance or support of the child.

In marked contrast, the term "in accordance" occurs in § 1325(b)(**3**) within the phrase "[a]mounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance" with § 707(b)(2). Congress did not include the phrase "to the extent" in § 1325(b)(3). While § 1325(b)(**2**) clearly states that the child support and other payments for a dependent child will be exempted from inclusion in current monthly income *only* if those payments are made in accordance with nonbankruptcy law *to the extent* reasonably necessary to be expended for the child, §1325(b)(**3**) states that the amounts determined to be reasonably necessary under §1325(b)(2) *shall* be determined *in accordance with* §707(b)(2)(A) and (B)–period. The term "reasonably necessary" in §1325(b)(3) is not superfluous–it is the very term that the section defines. For that reason, this

Court does not agree that courts may conduct a separate "reasonably necessary" analysis beyond §

707(b)(2).

Accordingly, the Court next must look at § 707(b)(2), to see whether that section allows

debtors to subtract secured debt payments for collateral they intend to surrender.

        3.      <u>The Language of 707(b)(2)(A) Lists As "Amounts Reasonably Necessary" Any</u>
                  <u>Payments on Secured Debts That Are "Scheduled As Contractually Due" To The</u>
                  <u>Secured Creditors In Each Of The 60 Months Of the Plan.</u>

With regard to secured debts, § 707(b)(2)(A)(iii) states in pertinent part:

> (iii)    The debtor's average monthly payments on account of secured debts
>           shall be calculated as the sum of–
>
>         (I)        the total of all amounts scheduled as contractually due to
>                   secured creditors in each month of the 60 months following
>                   the date of the petition . . .

divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

Mortgages debts are secured debts. Section 707(b)(2)(A)(iii)(I) states that "[t]he debtor's

average monthly payments on account of secured debts shall be calculated as the sum of . . . the total

of all amounts *scheduled as contractually due to the secured creditors in each month of the 60*

*months following the date of the petition* . . . divided by 60."   (Emphasis added.)   Thus, §

707(b)(2)(A)(iii) requires a debtor to total all mortgage payments "scheduled as contractually due

in each month of the 60 months" following the petition date, then divide that number by 60. This

requirement begs the next question–what does it mean for an "amount" to be "scheduled as

contractually due?"  Does it mean listed on the bankruptcy schedules as due?  Or does the phrase

have some other meaning?

a.      "Scheduled As Contractually Due" In The Chapter 7 Context Means Due
                Under the Mortgage Contract As Of The Petition Date.

        This Court's colleague answered that question in the Chapter 7 context.  In <u>In re Nockerts</u>,

357 B.R. 497 (Bankr. E.D. Wis. 2006), Judge Kelley concluded that the phrase "scheduled as

contractually due" in § 707(b)(2) refers to whether the debtors remained contractually obligated to

make payments on the secured debt.  She reached this conclusion by looking at the phrase in the

context of the Bankruptcy Code in its entirety.  Noting that the Code used the phrase "scheduled as"

only one other time (in § 1111(a)), Judge Kelley determined that Congress could not have been

referring to the bankruptcy schedules when it used the phrase "scheduled as," because in the Code,

"[w]hen describing the bankruptcy schedules, Congress included in the statute a reference to the

schedules, either directly by name or indirectly by reference to § 521." <u>Id.</u> at 502.  In contrast, she

noted that "when the statute refers to scheduled payments, such as in the reaffirmation or pre-

confirmation lease provision, the bankruptcy schedules are not mentioned."  <u>Id.</u>  Because §

707(b)(2)(a)(iii) makes no reference to the bankruptcy schedules, Judge Kelley concluded that

thephrase "scheduled as contractually due" in § 707(b)(2)(A)(iii) meant a secured debt that a debtor

is contractually obligated to pay according to the contract schedule.  <u>Id.</u> at 504-505.[3]

        Other courts have agreed with Judge Kelley's reading of the phrase.  In <u>In re Burmeister</u>, 378

B.R. 227, 230 (Bankr. N.D. Ill. 2007), the bankruptcy court for the Northern District of Illinois

concluded that "the phrase 'contractually due' in section 707(b)(2)(A)(iii)(I) means a legal

obligation under a contract, an obligation the debtor owes."  The <u>Burmeister</u> court cited <u>In re</u>

_____

        [3]  The Court notes that its colleague in the Western District, Judge Utschig, has reached
the same conclusion in the Chapter 7 context.  *See* <u>In re Kogler</u>, 368 B.R. 785, 790-91 (Bankr.
W.D. Wis. 2007).

                                              13

Walker, No. 05-15010, 2006 WL 1314125, at *3 (Bankr. N.D.Ga. May 1, 2006), which held that payments that are "'scheduled as contractually due' are those payments that the debtor will be required to make on certain dates in the future under the contract."

        b.      "Scheduled As Contractually Due" in The Chapter 13 Context Means Due Under the Chapter 13 Plan As Of The Effective Date Of That Plan.

Ordinarily one would think that if "scheduled as contractually due" means "due under the contract" in the Chapter 7 context, it should mean exactly the same thing in any other context in which it appears. But Judge Kelley hinted in <u>Nockerts</u> that she may have reached a different conclusion had she been called upon to interpret the phrase in the Chapter 13 context. <u>In re Nockerts</u>, 357 B.R. 497 at 504. And indeed, other courts have found exactly that.

In <u>In re McPherson</u>, the bankruptcy court for the Western District of Virginia held that "[t]he term 'contractually due' . . . does not carry the same meaning in a chapter 13 case as in a chapter 7 case." <u>In re McPherson</u>, 350 B.R. 38, 46 (Bankr. W.D.Va. 2006). The basis for the <u>McPherson</u> court's conclusion was the fact that in a Chapter 13 case, the debtor proposes a plan of repayment for creditors–including secured creditors. The <u>McPherson</u> court reasoned that "[t]he chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor." <u>Id.</u>

How can the provisions of a Chapter 13 plan take the place of a debtor's contractual obligations under, say, a mortgage contract? The <u>McPherson</u> court explained:

> This Court has previously recognized that once a plan is confirmed, and the property of the estate has vested in the debtor, the secured creditor's rights and interests are then defined strictly by the provisions of the plan. *In re Johnson*, 63 B.R. 550 (Bankr. D. Colo. 1986). That holding is clearly in accordance with the explicit provisions of 11 U.S.C. § 1327(a). *In other words, the plan itself has the*

14

> *effect of making a new agreement between the debtor and the creditor with a new obligation to be paid in the manner provided for by the terms of the plan. See, Matter of Winterfeldt, 28 B.R. 486 (Bankr. E.D. Wis. 1983); In re Tucker, 35 B.R. 35 (Bankr. M.D. Tenn. 1983) and cases cited therein; In re Hebert, 61 B.R. 44 (Bankr. W.D.La. 1986).*

Id. at 46-47 (emphasis in the original).

Other courts have reached the conclusion that the debtor's Chapter 13 plan has the effect of creating a new contract between the debtor and the secured creditor. *See, e.g.*, In re Nicholson, 70 B.R. 398, 400 (Bankr. D. Colo. 1987) ("the plan itself has the effect of making a new agreement between the debtor and the creditor with a new obligation to be paid in the manner provided for by the terms of the plan"); In re Crittendon, No. 06-10322, 2006 WL 2547102, at *4 (Bankr. M.D.N.C. Sept. 1, 2006) ("The confirmed chapter 13 plan constitutes a new agreement between the debtor and the creditors and is controlling as to the payments to be made to creditors as well as to which of the creditors are secured creditors."); In re Edmunds, 350 B.R. 636, 645 (Bankr. D.S.C. 2006) ("a debtor's plan represents a new contract with his creditors and therefore Debtors may only take a deduction [from the disposable income calculation] to the extent that Debtors are treating these creditors as secured creditors scheduled for payment by Debtors in their chapter 13 plans"); In re Spurgeon, 378 B.R. 197, 201 (Bankr. E.D.Tenn. 2007) ("confirmation of the plan will change the facts relevant to the deduction. The amounts that would otherwise be due under the contract after the debtor filed the chapter 13 case will not be scheduled as contractually due to a secured creditor.").

The fact that "scheduled as contractually due" has a different meaning in the Chapter 13 context than it does in the Chapter 7 realm also impacts the timing of when one looks at whether payments are "scheduled as contractually due." In the context of a Chapter 7 proceeding, courts in

15

both the Eastern and Western Districts of Wisconsin have found that the time for determining whether payments are "scheduled as contractually due" is at the time the debtors filed their petition. In In re Nockerts, Judge Kelley determined that if the payments were "scheduled as contractually due" on the date the debtor filed the petition, then they appropriately were deducted from the current monthly income on the means test calculations. In re Nockerts, 357 B.R. 497 at 505. *See also,* In re Kogler, 368 B.R. 785 (Bankr. W.D. Wis. 2007). The Georgia court reached the same conclusion in the Walker case. In re Walker, 2006 WL 1314125 at *3.

In the context of calculating disposable income for Chapter 13 purposes, however, the timing is different. Section 1325(b)(1) states that if the trustee objects to confirmation of a plan, the court may not approve the plan "unless, *as of the effective date of the plan,*" the plan provides for all of the debtor's projected disposable income "received in the applicable commitment period *beginning on the date that the first payment is due under the plan*" to be applied to paying unsecured creditors. (Emphasis added.) In Crittendon, the court concluded that the "as of the effective date" language in §1325(b)(1) modified the "amounts reasonably necessary" language in § 1325(b)(3). Based on this conclusion, the court held that "'disposable income' will be determined . . . by applying section 707(b)(2)(A) and (B) according to the pertinent circumstances existing on the date of the confirmation hearing, rather than on the basis of the circumstances existing on the petition date." Crittendon, 2006 WL 2547102 at *3.[4]

One bankruptcy court has disagreed with the Crittendon analysis, but this Court does not find its reasoning persuasive. In In re Burmeister, the bankruptcy court for the Northern District of

---

[4]   Other courts have concluded that the term "effective date of the plan" as used in §1325(b)(1) means the date that the Chapter 13 plan is confirmed. *See* In re Pak, 378 B.R. 257, 265 (9th Cir.BAP.2007); In re Fleishman, 372 B.R. 64, 73-74 (Bankr.D.Or.2007).

Illinois held that, in the Chapter 13 context, amounts "scheduled as contractually due" "are determined as of the petition date." 378 B.R. 227, 230 (Bankr. N.D.Ill. 2007). The court reached this conclusion after looking at cases such as In re Randle, 358 B.R. 360, 362-63 (Bankr. N.D.Ill. 2006), *aff'd sub nom.*, Randle v. Neary, 2007 WL 2668727 (N.D.Ill. 2007). The trustee in Burmeister argued that the Randle decision was a Chapter 7 case, and therefore that the Burmeister court should not follow its reasoning. The Burmeister court disagreed, responding that

> [s]ection 1325(b)(3) . . commands the determination of disposable income for a chapter 13 debtor under sections 707(b)(2)(A) and (B), and a decision about the meaning of [that section] is therefore as relevant as one addressing the issue in a chapter 13 case. The trustee has given no reason why section 707(b)(2)(A)(iii)(I) should be interpreted differently in chapter 7 and chapter 13 cases.

Burmeister, 378 B.R. at 230 n.1. As discussed in the body of this decision, this Court and others have concluded that there *is* a difference when interpreting § 707(b)(2) in the context of the Chapter 13 disposable income analysis. Therefore, this Court respectfully disagrees with the Burmeister court.

The Burmeister court also acknowledged, but disagreed with, the reasoning supporting the Crittendon court's conclusion that the determination of whether a mortgage payment is "scheduled as contractually due" is made as of the effective date of the plan. The Burmeister court did not read the phrase "as of the effective date of the plan" in § 1325(b)(1) to modify the phrase "disposable income" in § 1325(b)(3). 350 B.R. at 231. Again, this Court respectfully disagrees. Section 1325(b)(2) requires that all of the debtor's "projected disposable income" "as of the effective date of the plan" be committed to the payment of unsecured creditors. Section 1325(b)(2) defines the "disposable income" portion of the "projected disposable income" that § 1325(b)(1) requires to be committed "as of the effective date of the plan." So this Court concludes, as did the Crittendon

17

court, that the phrase "as of the effective date of the plan" *does* modify the phrase "disposable income."

Thus, this Court agrees with <u>Crittendon</u> that one looks at whether mortgage payments are "scheduled as contractually due" as of the effective date of the plan, and not as of the date the petition was filed, in determining whether those payments can be subtracted from current monthly income to obtain projected disposable income.

        c.      Applying The Holdings Of <u>McPherson</u>/<u>Crittendon</u> In This District Results In The Conclusion That Mortgage Payments On Collateral Which The Chapter 13 Plan Proposes To Surrender Are Not "Scheduled As Contractually Due."

The confirmed plan controls in this district, in cases where the plan gives creditors clear notice of their treatment.  *See, e.g.*, <u>Matter of Winterfeldt</u>, 28 B.R. 486, 488 (Bankr. E.D.Wis.1983); <u>In re Westenberg</u>, 365 B.R. 895, 900 (Bankr. E.D.Wis. 2007); <u>In re Smith</u>, No. 06-20127, 2007 WL 1544366 (Bankr. E.D.Wis. May 29, 2007).  The debtors in this case proposed in their plan to surrender the mortgaged property, and their plan did not make provision for any payments to be made to the mortgage creditors.  Pursuant to the reasoning in the <u>McPherson</u>/<u>Crittendon</u> line of cases and the case law of this district, upon confirmation, this plan would constitute a new agreement between the debtors and the secured lenders, and their payments no longer would be "scheduled as contractually due."

The plan in this case has not been confirmed, however, due to the trustee's objection. The <u>Crittendon</u> court held that a court must look at the question of whether the payments were "scheduled as contractually due" "according to the pertinent circumstances existing on the date of the confirmation hearing."  <u>Crittendon</u>, 2006 WL 2547102 at *3.  But this district does not hold confirmation hearings. In this district, the Form B9I that goes out to creditors in Chapter 13 cases

18

contains a section entitled "Proposed Plan; Objection to Plan; Hearing on Confirmation of Plan." That section states,

> If a plan has been filed, a copy is enclosed, if not, you will receive it at a later date. If there is no written objection to the plan, the Court may confirm the plan. If a written **objection to confirmation** of the proposed plan is filed no later than ten days after the completion of the Meeting of Creditors, a **hearing** will be scheduled by the Court. The only persons who will be notified of the hearing date will be the trustee, counsel for the debtor . . . , the Office of the United States Trustee, the objecting party, and all other persons who specifically request in writing to receive notice.

If no one files a written objection to confirmation within the ten days after the conclusion of the meeting of creditors, the trustee submits a proposed confirmation order to the court for approval. At that point, the plan becomes binding on all parties.

The trustee argues that because the debtors' plan proposes to surrender the real property and does not propose to pay the mortgage creditors, that proposed plan will create a new agreement between the debtors and the secured creditor. He argues that at that point, the mortgage payments no longer will be "scheduled as contractually due." But at *this* point, the debtors have only *proposed* a plan. No party other than the trustee objected to confirmation within the ten days If no creditor timely objects, but the plan is not yet confirmed, does a new "agreement" exist? Does the mortgage creditors' failure to object within the prescribed period of time indicate the creation, at the time that the objection period lapses, of a new agreement between the debtors and the mortgage creditors, even in the absence of confirmation?

One certainly could argue that the answer to these questions is "yes" in the case at bar. The debtors' Chapter 13 plan clearly states how the debtors plan to treat their mortgage creditors. The plan states that they will surrender the collateral. The plan does not make any provision for the debtors to make the mortgage payments. Indeed, on February 14, 2008, the Court granted one of

19

the mortgage creditors relief from the stay.  It appears that, even absent confirmation of the debtors'

plan, there is now a new contractual arrangement between the debtors and the mortgage creditors,

and there are no payments "scheduled as contractually due" under that contractual arrangement.

Accordingly, because there are no mortgage payments "scheduled as contractually due" under the

new arrangement, the debtors cannot deduct those mortgage payments from their current monthly

income in the disposable income calculations.

4.   The Language of § 1325(b)(1) Supports The Conclusion That Payments On Collateral That Will Be Surrendered Are Not "Scheduled As Contractually Due," Because The Terms "Projected" Disposable Income And "To Be Received" Are Forward-Looking Concepts.

a.   "Projected Disposable Income" Is Different From "Disposable Income."

Even if there has not been a new contractual agreement created between the debtors and the

secured lenders, there is more language in § 1325(b) supporting the conclusion that debtors cannot

subtract mortgage payments as expenses when they plan to surrender the collateral.  As noted in Part

II(A)(1) above, § 1325(b)(1) requires a debtor who has proposed a plan that has drawn an objection

to commit all of her "projected" disposable income to the plan.  Although Congress did not define

"projected" disposable income, the word "projected" must mean something.  Indeed, this Court and

a number others have concluded that, while the § 1325(b)(3) definition of "disposable income"

directs readers to the backward-looking "current monthly income" definition through § 707(b)(2),

the word "projected" is forward-looking.  *See*, *e.g.*, <u>In re Jass</u>, 340 B.R. 411 (Bankr. D.Utah 2006);

<u>In re Kibbe</u>, 342 B.R. 411 (Bankr. D.N.H. 2006), *aff'd sub nom.*, <u>Kibbe v. Sumski</u>, 361 B.R. 302 (1st

20

Cir. BAP 2007); <u>In re McGuire</u>, 342 B.R. 608 (Bankr. W.D.Mo. 2006);  <u>In re Fuller</u>, 346 B.R. 472 (Bankr. S.D.Ill. 2006).[5]

In the particular context considered here, other courts have concluded that the word "projected" requires them to look forward to whether the debtors will have to pay the mortgage expenses during the life of the plan.  In <u>McPherson</u>, the Virginia court read the word "projected" to mean that "the amounts [of the mortgage payments] in question are amounts that will arise in the future."  350 B.R. at 44.  In <u>Edmunds</u>, the South Carolina court found that the word "projected" "modifies 'disposable income,' which is a computation of both income and expenses."  350 B.R. at 643-44.  And in <u>In re Love</u>, 350 B.R. 611 (Bankr. M.D.Ala. 2006), the bankruptcy court reasoned as follows:

> Referring again to § 1325(b)(1)(B), the debtor is required to pay over all of one's "projected disposable income."  The term "projected" contemplates forward looking or future oriented approach.  One would not project or anticipate that a payment would be made on a secured indebtedness where the collateral had been returned.  Similarly, a Chapter 13 plan is necessarily a forward looking document. It is the debtor's proposal as to what he will do in the future to deal with his debts.

<u>Id.</u> at 613.

Perhaps most relevant to this Court, another judge from this district has reached this conclusion.  In <u>In re Kalata</u>, No. 07-21710, 2008 WL 522856 (Bankr. E.D.Wis. Feb. 27, 2008), Chief Judge McGarity agreed that "'projected disposable income' is distinguishable from 'disposable income' . . . ."  She reasoned that "Chapter 13 continues to be forward looking in the

---

[5] *But see*, <u>Mancl v. Chatterton</u> (<u>In re Mancl</u>), 381 B.R. 537, 541-42 (W.D.Wis. 2008) (finding that the phrase "projected disposable income" has no independent meaning from the phrase "disposable income," and merely represents "disposable income" projected over the life of the plan.)

statutory sense, as it must be, because in real life it will continue for up to five years after the date of filing." <u>Id.</u> at *5.

Therefore, in order to give the word "projected" in § 1325(b)(2) meaning, this Court agrees that it must take a forward-looking view of whether the debtors in this case will, over the life of their plan, have to make the mortgage payments on the home they are surrendering. They will not. Therefore, they cannot subtract those payments from their current monthly income in order to determine their "projected" disposable income.

        b.      Income "To Be Received" In The Applicable Commitment Period Means Income Available In The Future.

As they say in infomercials, "But wait–there's more!" Section 1325(b)(1)(B) mandates that when a debtor's proposed plan draws an objection, the court cannot confirm that plan unless it provides for all of the debtor's projected disposable income "*to be received in the applicable commitment period*" to be committed to paying the unsecured creditors. The phrase "to be received," like the word "projected," is forward-looking. It refers to projected disposable income that the debtor will receive in the future. If the debtor will not be making mortgage payments to the secured lenders in the future, then it stands to reason that, absent some intervening new expense, those funds will be "disposable" income that will be "received" in the future.

The South Carolina court in <u>Edmunds</u> found that this "to be received" language provided an indication that Congress meant for courts to look to the future to determine a debtor's disposable income. 350 B.R. at 644. This Court agrees. This language provides further support for the conclusion that debtors cannot subtract mortgage payments they will not be making in the future.

        5.      <u>The Language of Section 1325(b)(2) Supports The Conclusion That Mortgage Payments On Collateral That Will Be Surrendered Are Not "Scheduled As</u>

22

<u>Contractually Due," Because It Refers To Amounts Reasonably Necessary "To Be Expended," Another Forward-Looking Concept</u>.

When defining "disposable income" in § 1325(b)(2), Congress said that the phrase referred to current monthly income minus amounts reasonably necessary "*to be expended*" for the debtor's maintenance and support. It did not say for the debtor to subtract "amounts expended" for maintenance and support–it referred to amounts "*to be* expended." Again, like the word "projected" and the phrase "to be received," the

phrase "to be expended" is a forward-looking phrase. It requires debtors, and courts, to look into the future to determine, inasmuch as possible, what expenses the debtor will have during the life of the plan.

Other courts have found that in order to give the phrase "to be expended" meaning, they must determine whether the debtor will be required to make the mortgage payments going forward. *See* <u>Kalata</u>, 2008 WL 552856 at *5; <u>Spurgeon</u>, 378 B.R. at 202 ("The use of 'to be expended' generally requires the court to determine actual future expenses instead of being bound to assume that past expenses will continue."); <u>Edmunds</u>, 350 B.R. at 643-44 (the phrase "to be expended" is "a clear indication that Congress intended the courts to determine 'projected disposable income' as of the petition date forward.").

This Court agrees–if a debtor intends to surrender collateral, then the payments on that debt are not amounts reasonably necessary "to be expended" in the future for the maintenance and support of the debtor. If they are not going to be expended in the future, they cannot be subtracted from the current monthly income to reach the "projected" disposable income.

6.     <u>The Court Concludes That Sections 1325 And 707(b) Do Not Allow The Debtors To Subtract From Their Disposable Income Calculations Secured Debt Payments For Collateral They Will Surrender</u>

23

For all of the reasons discussed above,[6] this Court holds that § 1325 and § 707(b), when read together–as they must be–preclude a Chapter 13 debtor, when calculating his "projected disposable monthly income," from subtracting from his current monthly income secured debt payments for collateral that he intends to surrender.

## B.      The Seventh Circuit Prohibits Courts From Considering A Chapter 13 Debtor's Ability to Pay As An Indication Of Bad Faith.

As an alternative to the statutory interpretation argument, the trustee argued that even if §§ 1325(b)(3) and 707(b)(2)(A)(iii)(I) had required the debtors to deduct the Brookfield mortgage expenses to determine their projected disposable income, the debtors' plan was not filed in good faith, because the debtors had the ability to pay more money to their unsecured creditors than the

_____

[6]      Chief Judge McGarity articulated a policy rationale supporting this Court's conclusion in her recent decision in <u>Kalata</u>–that of avoiding "vain procedural exercises."  In <u>Kalata</u>, Judge McGarity reasoned as follows:

> [T]he trustee could move to modify the plan under 11 U.S.C. § 1329(a)(1) [in cases where debtors subtract secured debt payments for collateral they plan to surrender] to increase the amount to be paid to unsecured creditors. . . .  Since section 1325(b) is not one of the requirements for confirmation of a modified plan, and section 1325(b) is the section that incorporated that section 707(b)(2)(A) expenses, the court could then look at the debtor's actual ability to pay.  *See* 11 U.S.C. § 1329(b).  The motion for modification could come almost immediately after initial confirmation.  This strikes me as an unnecessary step to achieve the fair and practical result.

<u>In re Kalata</u>, 2008 WL 522856 at *6.

This Court agrees.  While this Court has, on numerous occasions, expressed a reluctance to speculate on what Congress intended when drafting the BAPCPA amendments, it does seem unlikely that Congress intended to allow debtors to subtract from their projected disposable income calculations secured debt payments that they would not be making, only to force the trustee to file a § 1329(b) motion to modify the plan moments later, then have the court grant that motion and order the debtors to modify the plan they filed moments ago.

plan provided. The trustee contended that such a plan did not meet the independent requirement of good faith under §1325(a)(3).

As this Court has stated, it finds that §§ 1325(b)(2) and (b)(3) do not allow the debtors to subtract payments for secured debt on collateral they plan to surrender. But the Court notes that the Seventh Circuit Court of Appeals has long held that "[s]ince Congress has . . . dealt with the issue [of a Chapter 13 debtor's ability to pay] quite specifically in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered as even a part of the good faith standard,. . . . Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith." In re Smith, 848 F.2d 813, 820-21 (7th Cir.1988) (*citing* King, 5 Collier on Bankruptcy, ¶ 1325.04[3] at 1325-17 (15th ed. 1988)) (footnotes omitted). *See also*, Mancl v. Chatterton (In re Mancl), 381 B.R. 537, 542 (W.D.Wis. 2008).

Therefore, the question of whether the debtors committed all of their projected disposable income into the plan is a matter solely for review under §1325(b), and is not pertinent to engaging in a review of good faith under §1325(a)(3). While the Court finds that the statute does not allow the debtors to subtract their mortgage payments in the disposable income analysis, it also finds that the debtors filed their amended Chapter 13 plan in good faith.

### III. CONCLUSION

The Court concludes that §§ 1325 and 707(b) do not allow the debtors to deduct from their current monthly income the mortgage payments for the Brookfield property in order to calculate their projected disposable income. Therefore, the Court **SUSTAINS** the trustee's objection to confirmation of the debtors' Amended Chapter 13 plan. The Court will allow the debtors thirty (30) days from the date of this Order to file an amended Chapter 13 plan.

25

\# \# \# \# \#